IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| C.H. ROBINSON WORLDWIDE, INC., a foreign corporation,<br><br>   Plaintiff,<br><br>   vs.<br><br>WEST COAST CARRIERS, L.L.C., a Washington limited liability corporation; ADAM J. LOLLEY and CATHY LOLLEY, individually and the marital community comprised thereof,<br><br>   Defendants. | C08-5415 FDB<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND EXPEDITED DISCOVERY |

This matter comes before the Court on C.H. Robinson Worldwide, Inc.'s ("CHRW") motion for issuance of a temporary restraining order and to expedite discovery. It appears from the record on file that CHRW's motion was served upon Defendant Adam Lolley ("Lolley") and Defendant West Coast Carriers, LLC ("WCC") contemporaneously with the service of the complaint and the filing of this motion with the Court. WCC and Lolley have received notice of this motion prior to its disposition by virtue of this Order.

To prevail on a motion for temporary restraining order or to receive preliminary injunctive relief, the moving party bears the burden of demonstrating either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) the existence of serious questions as to success on the merits and irreparable injury along with a sharp tipping of the balance of hardships in favor of the moving party.

ORDER -1

Stahlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc., 240 F.3d 832, 839-840 (9th Cir. 2001).   These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. Under both formulations, however, the party must demonstrate a fair chance of success on the merits and a significant threat of irreparable injury.  Arcamuzi v. Continental Air Lines, Inc., 819 F.2d 935, 937 (9th Cir.1987).  The court also considers the relative balance of harm to the parties and the public interest at stake. Alaska v. Native Village of Venetie, 856 F.2d 1384, 1388 (9th Cir. 1988).

Plaintiff first argues that it is likely to succeed on the merits of its claim under the Consumer Fraud and Abuse Act (CFAA), which creates liability for anybody who "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains ... information from any protected computer if the conduct involved an interstate or foreign communication." 18 U.S.C. § 1030(a)(2)(C). The CFAA further provides, "Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." Id. § 1030(g). For purposes of a civil action, the loss, including "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service," must total at least $5,000 in value. Id. §§ 1030(a)(5)(B)(i); 1030(e)(11); 1030(g).   Plaintiff contends that it can prove it suffered over $5,000 in loses citing the mere costs of investigating the theft of information.

The Washington Uniform Trade Secrets Act  prohibits misappropriation of trade secrets. RCW 19.108.910.  The Act defines misappropriation as the 'Disclosure or use of a trade secret of another without express or implied consent'. RCW 19.108.010(2)(b).  Generally, taking an employer's confidential customer list without permission is a trade secret misappropriation in violation of the Uniform Trade Secrets Act (UTSA). Thola v. Henschell, 140 Wn.App. 70, 164

P.3d 524 (2007); Pacific Aerospace & Electronics, Inc. v. Taylor, 295 F.Supp.2d 1188 (E.D. Wash. 2003).

Based on the evidence presented, the Court finds the following facts establish there is a combination of probable success on the merits of CHRW's Computer Fraud & Abuse Act claim, Washington Uniform Trade Secrets Act claim and Breach of Contract claims and that a possibility of irreparable harm exists without the issuance of a temporary restraining order:

1.  Defendant Lolley was a CHRW Transportation Sales Representative, who started his employment on May 2, 2006. In that capacity, Lolley was responsible for daily operations involving the sale of CHRW's services to individual customers and arranging customer shipments with the various third party suppliers that the Company uses in its regular course of business.

2.  Lolley's employment ended on April 26, 2008 based on his decision to resign from the CHRW.

3.  On April 9, 2008, and April 15, 2008, knowing he was leaving his employment with CHRW to become employed with a competing company, Lolley entered the computer network of CHRW and misappropriated Company customer and carrier information and related financial data. This information provides CHRW with a significant competitive advantage in the transportation brokering marketplace.

4.  Lolley sent to himself at his personal e-mail address several e-mails attaching Microsoft Excel spreadsheets containing comprehensive data from 2007 and 2008 regarding each of CHRW's customers for its Bellevue Office. The stolen customer data included the revenues, profit margins, and recent levels of business with CHRW over a two year period. He also sent himself seven data files containing detailed customer information from the years 2006, 2007 and 2008, including the identity of their carriers and pricing information. This type of information has been developed and built up by CHRW over the past several years. It therefore has value which only is increased by the fact that it derives independent economic value by not

ORDER - 3

being known by those who could profit from its use while in competition against CHRW. The specific e-mails and attachments are identified at ¶ 9 of the Declaration of Bruce Gustas.

     5.     Armed with this information, a competitor could divert customers from CHRW by undercutting CHRW's prices and disparaging CHRW's rates. Likewise, a competitor, such as WCC or any other transportation broker, could use the carrier information to divert carriers from dealing with CHRW by overbidding for shipping rates when the transportation market is strong.

     6.     In addition to password protection, which limits access to the Company's computer databases only to authorized employees, CHRW has several policies in place that are designed to protect the information at issue in this case. As a condition of employment, on May 2, 2006, Lolley signed a Data Security Agreement acknowledging, among other things, that all customer lists, customer names, and customer records were to be considered the confidential and proprietary records belonging to CHRW and that such information was not to be stored outside of the office. Lolley also signed the Company's Electronic Data and Communications Policy. This policy provides, among other things, that "all material or data created or stored" on CHRW's computer network "are the property of and belong to the Company," that materials on the computer network "may be confidential or proprietary to the Company or its customers or vendors and should be treated as confidential." The Policy also provides that "[t]he Company's Electronic Systems may not be used for personal gain . . . or any illegal or unethical use" and that "[u]nauthorized and illegal uses" of the Company computers includes "providing Company information to a competitor, [and] sending Company information or e-mail to yourself at a personal e-mail address or to a third party for purposes other than as authorized for furthering the legitimate goals of the Company." Finally, Lolley also signed a "Confidentiality and Noncompetition Agreement." This Agreement, among other things, obligates Lolley "at any time" not to "use, disclose, copy or assist any other person or firm in the use, disclosure or copying of any" of CHRW's confidential information that includes, in relevant part, all "customer and carrier lists" and "pricing information."

ORDER - 4

7.     On May 2, 2006, Lolley signed an Employee Certificate of Compliance acknowledging that he had received a copy of the Code of Ethics and that he understood that he had a "continuing obligation for so long as I remain employed by Company to read, review, and understand each and every new Company policy or any and all amendments or modifications to the Company policies that may become effective during the course of my employment." The Code of Ethics provides, among other things, that business, financial, marketing and service plans associated with products and services, customer lists, business and product plans with outside vendors, pricing strategies and internal data bases are examples of Information Assets that are to be protected. The policy explicitly states that "You many not use any non-public information which you have access to in the course of your work for C.H. Robinson for any personal gain or advantage."

8.     Lolley admitted to CHRW employee Megan Kaysinger on April 11, 2008 that he was seeking employment competitive against CHRW with a company located in Port Orchard, Washington, which is where WCC is located. On April 15, 2008, the day after Mr. Lolley gave his notice of resignation to CHRW, he admitted to Ms. Kaysinger that he accepted employment with the Port Orchard based employer. On April 14, 2008, however, Lolley advised Mr. Gustas, CHRW's Bellevue, Washington office manager, that he was resigning due to health care concerns with his grandmother-in-law.

NOW, THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:

A.     Defendants Lolley and/or WCC are ordered to return to CHRW (though its counsel) within 48 hours of the issuance of this Order all hard copies of CHRW customer, carrier and revenue data obtained from CHRW and its computer systems;

B.     Defendants Lolley and/or WCC shall not use or disclose such data in any manner whatsoever;

C.     Defendant Lolley and/or WCC shall not solicit or conduct business with CHRW customers/carriers listed on the misappropriated computer data;

D. Within 48 hours from the date of this Order, Lolley shall compile a list of all computers, including desktops, laptops, servers, disks, tapes, CDs, DVDs, jump drives, and any other electronic storage device or medium, whether personally owned or owned by his current employer, which are or have been in his custody, possession and/or control or use from April 9, 2008 through the present. Defendant WCC shall compile a similar list within the same period of time of all desktops, laptops, servers, disks, tapes, CDs, DVDs, jump drives, and any other electronic storage device or medium to which Lolley has or had access;

E. Within 48 hours from the date of this Order, Lolley shall compile a list disclosing any and all persons and/or entities to whom any CHRW data has been disclosed or disseminated, and shall deliver the list(s) to counsel for CHRW herein;

F. To the extent that any computer or other storage device or medium on the list compiled pursuant to paragraph D, above, is not also delivered to counsel for CHRW, within four days from the date of this Order, Lolley and WCC shall provide access to an independent forensic consultant retained by CHRW to each such computer or other storage device or medium so that the forensic computer consultant may conduct an inspection of such computer/storage device for CHRW's data described in paragraph four above and permanently delete the same as well as make a forensic image of each such computer/storage device as it existed prior to any deletions made by the forensic consultant solely for use in this litigation;

G. Lolley and a WCC representative shall make themselves available at a mutually agreeable time no later than 21 days from the date of this Order for deposition conducted by CHRW's counsel;

H. A hearing to show cause why a preliminary injunction shall not be entered is scheduled for July 17, 2008, at 9:00am.

ORDERED this 8th day of July, 2008.

FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE

ORDER - 6